IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAWRENCE COLLINS,

        Plaintiff,                            CV F 04 6601 OWW WMW P

    vs.                                  FINDINGS AND RECOMMENDATIONS
                                        RE DEFENDANT'S MOTION FOR
                                        SUMMARY JUDGMENT (DOC 38)

C/O PEREZ,

        Defendant.

        Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1). Pending before the Court is Defendant's motion for summary judgment. Plaintiff has opposed the motion.

        This action proceeds on the July 21, 2005, first amended complaint. Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation at the California Rehabilitation Center at Norco, brings this civil rights action against Correctional Officer Perez, an employee of the Department of Corrections at Corcoran State Prison.

        Plaintiff's claims in this complaint stem from his allegations that C/O Perez searched plaintiff's cell, confiscated plaintiff's medication, and refused to return it. Perez also directed a racial epithet at plaintiff. Plaintiff alleges no other conduct as to Perez, and no

conduct as to the California Department of Corrections.

On May 10, 2005, the court entered an order dismissing the original complaint with leave to amend. The court advised Plaintiff that his claim of racial discrimination failed, as the conduct by defendant Perez was verbal. Plaintiff had not alleged facts sufficient to state a claim for relief on an equal protection claim.

In the first amended complaint, Plaintiff claims that Defendant Perez retaliated against Plaintiff for the exercise of his First Amendment rights. Specifically, Plaintiff claims that Perez retaliated against him for filing an inmate grievance regarding Perez's conduct.

In the first amended complaint, plaintiff set forth a detailed history of his medical care. Plaintiff alleged that on August 25, 2002, he filed an inmate grievance regarding defendant Perez. Plaintiff alleges that, "in retaliation for plaintiff's continued filing prison grievances and 42 USC § 1983s against defendant, the defendant threatened to continue to punish plaintiff for his exercising first amendment rights." The court found that Plaintiff stated a cognizable claims for relief under 42 U.S.C.§ 1983 against Defendant Perez for retaliation. Defendant Perez has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party
>
> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it

2

believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon its allegations, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,

the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

Defendant's Statement of Undisputed Facts[1]

### Back Injury and Prescribed Pain Medication

1. On June 25, 2002, Collins was seen by Dr. Bhatt for back pain. DX B, p. 1 Attachment 1 (Declaration of A. James and documents from Collins' medical file). Collins complained of pain to his left suprascapula and to his right lower paraspinal. DX B-1, p.1. Dr. Bhatt referred Collins to the pain clinic and renewed Collins' prescription for Motrin and Robaxin. DX B-1, p. 1.

2. The prescribed medications had an expiration date of August 24, 2002. DX B-1, p. 7.

3. On July 17, 2002, Collins filed a staff complaint against an unnamed nurse claiming she would not let him see a doctor for his back pain. DX A-1, p. 7-10.

4. Collins was seen by Dr. Kim on July 17, 2002. Collins complained of right-sided lower back pain that had been going on for several weeks. DX B-1, p. 2. Dr. Kim noted no gross deformities and no spasm. DX B-1, p. 2. Collins' standard leg range test was positive, and he was able to perform a toe and heel walk. DX B-1, p. 2. Dr. Kim prescribed three days of bed rest, an 60 mg. injection of Ketorolac, and two days of 30 mg. Ketorolac. DX B-1, p. 2. Dr. Kim noted that x-rays of the left spine would be obtained, and if suggested, a CT or MRI. DX B-1, p. 2.

5. Collins was seen by Dr. Friedman in the pain clinic on August 19, 2002. The impression was myoparcial pain syndrome with triggers at sacral notches. Dr. Friedman prescribed trigger injections in several notches. DX B-1, p. 3. Dr. Friedman also noted Collins' psychiatric history. DX B-1, p. 3.

---

[1] Plaintiff did not submit a separate statement of undisputed facts. The Court will summarize Plaintiff's objections to certain of Defendant's Statement of Undisputed Facts.

6. Collins was seen again on August 30, 2006, requesting refills of his pain medications. DX B-1, p. 3. Dr. Dang ordered Collins' prescription refill and a follow-up appointment with Dr. Friedman. DX B-1, p. 3.

**Incident of August 25, 2002**

7. On August 25, 2002, correctional staff at CSP-Corcoran were conducting facilitywide cell searches. DX C (Declaration of M. Seifert), ¶ 5. Officer Perez and Sergeant Drew searched plaintiff's cell. DX A-1, p. 23; DX C, ¶¶ 5-10. During the search, Officer Perez confiscated Collins' headphones and expired medications. DX A, p. 13, 23; DX C, ¶ 5.

8. Collins asked Officer Perez why she had seized the items, and was told that the headphones had been altered and the date on the medications had passed. DX C, ¶ 5.

9. Section 52051 of the Departmental Operations Manual (DOM) requires that outdated medications be confiscated and disposed of the by medical department. DX D (DOM, Article 20 – Disposition of Contraband), § 52051.11. Contraband is considered to pose a threat to persons or to the physical security of the facility. DX D, § 52051.2.

10. Collins told Officer Perez that he wanted to see a doctor. DX C, ¶ 6. Officer Perez responded that "you fucking mayetes don't run nothing around here." DX A, p. 13; DX C, ¶ 6.

11. According to Collins, the word "mayete" is Spanish for "nigger." DX C, ¶ 6.

12. Collins jumped off of his bunk and yelled, "you can't talk to me like that." DX C,¶ 8.

13. Collins filed a grievance regarding the incident with Officer Perez. DX A-1, p. 13-19. According to the grievance, Collins called Officer Perez back to his cell to ask why she had seized his medications. DX A-1, p. 13. Officer Perez refused to return Collins' pills and told Collins' "you fucking niggers think you are running things at Corcoran and you are not running shit." DX A-1, p. 13.

14. The grievance also states that the expiration date on Collins medication was August 24, 2002. DX A-1, p. 17.

15. Lieutenant Seifert investigated Collins' allegations of staff misconduct and concluded that there was sufficient evidence to sustain the allegations. DX A-1, p. 20, DX C,

**Collins' Psychiatric Treatment**

16. On February 20, 2001, Collins returned to CSP-Corcoran after being out to court. DX A-1, p. 6. Collins was assessed by B. Steele on February 27, 2001, as a new arrival. DX B-1, p. 10-11. Collins reported he had no mental health needs at that time. DX B-1, p. 11. Dr. Steele noted that Collins had a history of paranoid schizophrenia, but Collins' symptoms were in remission. DX B-1, p. 11.

17. On April 15, 2001, Collins was evaluated for possible release from the Correctional Clinical Case Management System (CCCMS). The clinician noted that Collins was stable at that time, and had not needed psychiatric medication since August 2000. DX B-1, p. 14.

18. On November 25, 2002, three months after the incident with Officer Perez, Collins requested a mental health visit due to an "emergency." DX B-1, p. 19-20. Collins told Dr. Steele that an officer on the yard and conducted a search of his cell and confiscated his pain medication and headphones. DX B-1, p. 19. Collins stated he confronted the officer and asked her to return his pain medication. DX B-1, p. 19. The officer refused and called him a "nigger." DX B-1, p. 19. Collins stated he had filed a grievance against the officer, and it had been granted. DX B-1, p. 19. Collins told the doctor "his concern now is about whether or not he may be retaliated against by the officer and other on the yard." DX B-1, p. 19. According to Collins, another inmate had told him Officer Perez said she was going to set Collins up and have him moved off the yard. DX B-1, p. 19. Collins said he was worried about what the officer and other officers might do, and stated he was worried/paranoid, causing him some stress. DX B-1,

p. 19-20. Collins told Dr. Steele he did not want to see a psychiatrist at that time. DX B-1, p. 20.

19. By January 2003, Collins' mental heath status was stable. DX B-1, p. 23-24.

20. In April 2003, Collins reported he was doing "very well," and was not on medication. DX B-1, p. 26-27.

21. By March 2004, Collins was requesting to be removed from CCCMS status as discharged from the mental health program. DX B-1, p. 34.

22. On March 25, 2004, Dr. Steele requested Collins' removal from CCCMS status and returned him to General Population (GP) status. DX B-1, p. 36.

Attached as part of Exhibit A to Plaintiff's opposition is "Plaintiff Answer to Defendant's Statement of Undisputed Facts." Plaintiff offers no facts that dispute Defendant's statement of undisputed facts. Plaintiff does add that his prescription had expired on August 24, 2002, one day before the events at issue. Plaintiff had put in a request to be seen at sick call on August 19, 2002, but had not been seen as of August 25th. Plaintiff levels the conclusory allegation that Perez, after being advised that the cell had already been searched, decided to search the cell again, did so for racially discriminatory purposes. The balance of Plaintiff's statement consists of legal argument.

Verbal Harassment.

Defendant correctly argues that verbal harassment does not violate the Eighth Amendment. Assuming the evidence shows that Perez called Plaintiff a "nigger" as alleged, such conduct, of itself, fails to state a claim for an Eighth Amendment violation. Mere verbal harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Even verbal conduct that constitutes a threat does not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

1  Defendant is therefore entitled to judgment on this claim.

2  <u>Eighth Amendment</u>

3  The Eighth Amendment provides that "cruel and unusual punishment [shall not
4  be] inflicted." "An Eighth Amendment claim that a prison official has deprived inmates of
5  humane conditions of confinement must meet two requirements, one objective and the other
6  subjective." <u>Allen v. Sakai</u>, 48 F.3d 1082, 1087 (9th Cir.) <u>cert</u>. <u>denied</u>, 514 U.S. 1065, (1995).

7  The objective requirement is met if the prison official's acts or omissions
8  deprived a prisoner of "the minimal civilized measure of life's necessities.'" <u>Id</u>. (quoting <u>Farmer</u>
9  <u>v. Brennan</u>, 511 U.S. 825, 834 (1994)). To satisfy the subjective prong, a plaintiff must show
10 more than mere inadvertence or negligence. Neither negligence nor gross negligence will
11 constitute deliberate indifference. <u>Farmer</u>, 511 U.S. at 833, & n. 4; <u>Estelle v. Gamble</u>, 429 U.S.
12 97, 106 (1976). The <u>Farmer</u> court concluded that "subjective recklesness as used in the criminal
13 law is a familiar and workable standard that is consistent with the Cruel and Unusual
14 Punishments Clause" and adopted this as the test for deliberate indifference under the Eighth
15 Amendment. <u>Farmer</u>, 511 U.S. at 839-40.

16 In order meet her burden on summary judgment, Defendant Perez must come
17 forward with evidence that establishes the lack of existence of a triable issue of fact - evidence
18 that she did not know of and disregard a serious risk to Plaintiff's health, resulting in injury to
19 Plaintiff. The sole conduct charged to Defendant Perez that could be regarded as an Eighth
20 Amendment violation is her confiscation of Plaintiff's medication. Defendant notes that it is
21 undisputed that the medication was expired. On page 2, line 9 of Plaintiff's opposition, he
22 concedes that the medication was expired. Defendants' Exhibit D is a copy of CDCR policy with
23 regard to outdated medication, indicating that is "shall be disposed of by medical staff in
24 accordance with DOM 52010."

25 Plaintiff's argument seeks to justify his possession of the medication - it was only

26

expired by one day, and he had not yet received a refill.  Defendant's evidence noted above shows that Officer Perez knew of Plaintiff's back pain prior to seizing the medication.  Further, there is no evidence from which Officer Perez could have inferred that Plaintiff, without his medication, would be subjected to serious injury within the meaning of the Eighth Amendment. The evidence submitted by Defendant Perez shows that she seized the medication pursuant to prison regulations, and she did not act with deliberate indifference to a serious medical need of Plaintiff's, resulting in injury to Plaintiff.

       The burden shifts to Plaintiff to come forward with evidence that establishes a triable issue of fact - evidence that Perez knew of and disregarded a serious risk to Plaintiff's health, resulting in injury to Plaintiff.  Plaintiff's contention is that his possession of the medication was justified.  Perez's liability under the Eighth Amendment does not turn on whether or not the medication was reasonably or properly seized.  There must be evidence that she knew of a serious medical condition of Plaintiff's.  As noted, the evidence submitted by Defendant indicates that she did not.  Plaintiff offers no evidence to the contrary.  Judgment should therfore be entered in Defendant's favor on this claim.

       <u>Equal Protection</u>

       Plaintiff claims that Officer Perez's conduct was motivated by a desire to discriminate against him because he is Black.  Plaintiff, in his opposition, argues that after Perez took his medication and gave it to MTA Lemos, MTA Lemos, then provided it to Plaintiff. Plaintiff's page 2, line 21 of his opposition. Plaintiff specifically argues that "Defendant C/O R. Perez treated the Plaintiff differently than similarly situated inmates." The Equal Protection Clause requires that persons who are similarly situated be treated alike. <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985).  Plaintiff may establish such a claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. <u>Village of Willowbrook v. Olech</u>, 528 U.S.

562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564. If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." Squaw Valley, 375 F.3d at 944; Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

Defendan's evidence establishes that Perez's conduct was motivated by prison regulations - there is no dispute that the medication was expired, and that the expired medicaiton was subject to confiscation under prison policy. Defendants' evidence shows that Perez actions were motivated by prison regulations.

In order to meet his burden, Plaintiff must come forward with evidence that Officer Perez allowed prisoners of other ethnic backgrounds to keep expired medications. The evidence is undisputed that Perez referred to Plaintiff by a racial epithet, but such a statement of itself, is not evidence that Perez allowed prisoners of other ethnic backgrounds to keep expired medications. Though Plaintiff is clearly aggrieved by Perez's statement, this claim does not turn on Perez's attitude toward Plaintiff or inmates of Plaintiff's race in general. Plaintiff must come forward with evidence that inmates of different ethnic backgrounds were treated differently, and that there was no rational basis for the difference in treatment. Plaintiff offers no such evidence. Plaintiff's subjective impression that Perez took his medication because of his ethnicity is unsupported by evidence. Perez is therefore entitled to judgment on this claim.

Retaliation

In the first amended complaint on which this action proceeds, Plaintiff alleges that on August 25, 2002, he filed an inmate grievance regarding defendant Perez. Plaintiff alleges that, "in retaliation for plaintiff's continued filing prison grievances and 42 USC § 1983s against defendant, the defendant threatened to continue to punish plaintiff for his exercising first amendment rights."

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The only conduct charged to the named Defendant in this action is the seizure of Plaintiff's medication. Pursuant to section 52051 of the Departmental Operations Manual, outdated medication is contraband, and as such, is considered to pose a threat to persons or the physical security of the facility. § 52051.2. Because expired medication is considered contraband and is deemed a threat to persons and to the physical security of the institution, Perez's actions advanced a legitimate correctional goal. Defendant also notes that the seizure of the medication occurred prior to the filing of Plaintiff's inmate grievance. An inmate bringing a § 1983 retaliation claim against prison officials must allege "a chronology of events from which retaliation may be plausibly inferred." Cain v. Lane, 857 F.2d 1139, 1143 n. 6(7th Cir. 1988).

Though the first amended complaint alleges Plaintiff's fear of retaliation,

1  Defendant's evidence establishes the lack of existence of a triable issue of fact - evidence that
2  Perez took action against Plaintiff for filing an inmate grievance.  The evidence submitted by
3  Defendant show that she took no action against Plaintiff.  Plaintiff's fear, based upon speculation
4  that Perez may take action against him, does not constitute evidence that meets the standard set
5  forth above.  The evidence submitted by Defendant shows that she did not take any action based
6  on the filing of an inmate grievance, let alone any action that actually chilled Plaintiff's exercise
7  of his First Amendment rights.

8  Plaintiff does not come forward with any evidence in opposition.  Plaintiff does
9  not offer any evidence that Perez took any adverse action against Plaintiff that chilled Plaintiff's
10 exercise of his First Amendment rights.  Judgment should therefore be entered in Defendant's
11 favor on this claim.

12 Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for
13 summary judgment be granted, and judgment be entered in favor of Defendant and against
14 Plaintiff.

15 These findings and recommendations are submitted to the United States District
16 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within
17 thirty days after being served with these findings and recommendations, any party may file
18 written objections with the court and serve a copy on all parties.  Such a document should be
19 captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the
20 objections shall be served and filed within ten days after service of the objections.  The parties
21 are advised that failure to file objections within the specified time waives all objections to the
22 judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file
23 objections within the specified time may waive the right to appeal the District Court's order.
24 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     February 14, 2008**             /s/  **William M. Wunderlich**
                                                      UNITED STATES MAGISTRATE JUDGE